_____

Nos. 95-3430/3744
_____

Kimberly Brandt,                        *
                                        *
          Appellee,                     *
                                        *   Appeal from the United States
     v.                                 *   District Court for the
                                        *   Eastern District of Missouri.
Shop 'n Save Warehouse Foods,           *
Inc.,                                   *
                                        *
          Appellant.                    *


_____

          Submitted:  May 16, 1996

            Filed:  March 17,1997
_____

Before BOWMAN, HEANEY, and WOLLMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.


     Shop 'n Save Warehouse Foods, Inc., a grocery chain operating stores
in the St. Louis metropolitan area, appeals from the judgment of the
District Court in favor of Kimberly Brandt on her claims of sex
discrimination.  We reverse.

     Brandt, a member of the United Food and Commercial Workers (UFCW)
Local 88 labor union, worked as a "casual" meat wrapper out of the union
hall from 1987 to July 1991.[1]  That is, she worked for Shop 'n Save and
other grocery stores on an "as needed," temporary

_____

[1]The 1993 UFCW Local 88 collective bargaining agreement with
Shop 'n Save now calls the meat wrapper position "meat clerk," and
has broadened the job description to include all duties previously
assigned the "meat cutter" position, except operating a band saw.

basis.[2]  The Shop 'n Save employees who knew Brandt and worked with her, without exception, praised her work.  In August 1990, Brandt sent a letter to Richard Marty, then acting senior vice president of human resources for Shop 'n Save, and a similar letter to Harold "Butch" Covili, Shop 'n Save's senior vice president of operations, expressing interest in joining Shop 'n Save as a permanent employee, in a position as, in her words, a "female apprentice meat cutter," or in front-end management or co-management.  As a courtesy, Marty interviewed Brandt on September 7, 1990, and told her then and in a follow-up letter dated ten days later that Shop 'n Save did not have a position to offer her.  Marty's letter said Brandt's resume would be retained in Shop 'n Save's "active files" for one year.  Brandt testified that, in the same time frame, she also told Danny Howard, who was one of three "meat specialists" each assigned to supervise meat operations at approximately one-third of Shop n' Save's twenty-eight stores, of her interest in an apprentice meat cutter position with Shop 'n Save.  As of trial, Shop 'n Save had only one female meat cutter, who had been hired by the company when it acquired a Kroger store where she was employed.  The evidence also shows that, of the 600-650 meat cutters on Local 88's membership roster at that time, only three or four were female.

In May 1991, Marty hired John Dougherty to fill the position of senior vice president of human resources, the position Marty himself had been holding temporarily, and Marty returned to his position with Shop 'n Save's parent corporation.  At this time, Covili also was no longer working in Shop 'n Save's St. Louis office.  So Marty and Covili were out of the picture as far as the day-to-day operations of Shop 'n Save's St. Louis area stores were concerned, but Howard, who also knew of Brandt's ambitions, was still working for the company as a meat specialist.  During the

_____

[2]In July 1991, Brandt was hired by Shop 'n Save as a permanent employee, working as a meat wrapper (now meat clerk).

-2-

month of May, after Dougherty was hired, the events leading up to Brandt's lawsuit transpired, although the record does not establish a precise sequence.

Sometime during the month, after Dougherty assumed his duties, he received a call from Bob Frentzel, an old friend he had known since 1966. Frentzel had experienced some employment setbacks since 1988, and in fact had been unemployed for five months before he called Dougherty. He sought whatever employment assistance Dougherty could offer. Also in May, Dougherty, together with Bill Fant, Shop 'n Save's meat manager, who had overall responsibility for the meat departments in all area stores, decided to hire an apprentice meat cutter, someone with management experience and "some college," but not necessarily any meat experience. The apprentice meat cutter job description in the UFCW Local 88 contract with Shop 'n Save in effect at that time did not say that the apprentice position was a management position, nor did the job description give any indication that any college education would be preferred, much less required, of the successful meat cutter apprentice. Dougherty and Fant's ostensible goal, however, was to move the person who was hired for the job into management after the two-year meat cutter apprenticeship was completed. This was the first time (and the last, as it turns out) that Shop 'n Save created an apprentice meat cutter position, although the union contract allowed one such position in each store if Local 88 gave its permission, as it did in this case.

In hiring a person to fill this new job, Dougherty and Fant never searched the "active files" for potential candidates who might have applied for employment with Shop 'n Save before the apprentice position was created. The job was never posted or otherwise advertised. Frentzel was the only person interviewed or even considered to fill the position. Dougherty, Fant, and Howard (who reported to Fant) all participated in the hiring of Frentzel. Frentzel had management experience, although not for several years;

-3-

he had "some college," although serious doubt was cast upon both just how much "some" is and the extent to which the decision-makers were genuinely interested in that aspect of Frentzel's background; and he had virtually no meat experience. Brandt had neither management experience nor "some college," but she did have extensive meat experience. By June 3, 1991, Bob Frentzel was on the job in the apprentice position, at the Shop 'n Save store where Brandt happened to be working as a meat wrapper out of the union hall. As of the date of trial on Brandt's claims, three and one-half years after he was hired and one and one-half years after he completed the apprentice program, Frentzel had not been promoted to a management position, despite the fact that Shop 'n Save had filled several openings for such positions with other individuals.

The same day Frentzel went to work for Shop 'n Save, Brandt confronted Dougherty and told him she had previously submitted a resume and had expressed an interest in a position as an apprentice meat cutter. She told Dougherty she believed his failure to consider her for the apprentice job was sex discrimination. Two weeks later, Brandt filed a charge of employment discrimination against Shop 'n Save with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. Brandt filed suit against Shop 'n Save in May 1992, alleging sex discrimination and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and the comparable Missouri employment discrimination law, Mo. Rev. Stat. §§ 213.010-.126. Trial was held before a jury and, by consent of the parties and pursuant to 28 U.S.C. § 636(c), before a magistrate judge. The jury found for Shop 'n Save on Brandt's claim of retaliation, but for Brandt on her claim of sex discrimination. The jury further determined that Shop 'n Save's conduct in this matter was such that punitive damages were warranted. In addition, in derogation of the court's instructions, the jury specified not only an amount of punitive damages (which was supposed to be determined in a later proceeding and for which the jury had no evidence), but also that Shop 'n Save

-4-

should pay Brandt's attorney fees.  After disposing of post-trial motions, the Magistrate Judge entered judgment on the jury's verdict, awarding Brandt equitable relief and $22,500 in compensatory damages.  The court also awarded Brandt $35,000 in punitive damages and $39,852.25 in attorney fees and costs.  Judgment was entered in favor of Shop 'n Save on Brandt's claim of retaliation.  Shop 'n Save appeals.

For its first issue on appeal, Shop 'n Save contends that the court erred in denying its motion for judgment as a matter of law (JAML).  We review de novo, "applying the same standard as the district court and overturning the verdict only if the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to support the verdict." Karcher v. Emerson Elec. Co., 94 F.3d 502, 507 (8th Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3587 (Feb. 5, 1997) (No. 96-1304).  We have recited the facts in this opinion mindful of that standard, but we have omitted those facts relating to Brandt's retaliation claim, the adverse judgment on which Brandt does not appeal.

Shop 'n Save makes a two-part argument on its JAML issue.  First, the company claims that Brandt failed to prove a prima facie case of sex discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and its progeny.[3]  In the event we disagree and conclude that Brandt proved her prima facie case, Shop 'n Save alternatively argues that Brandt did not sustain her ultimate burden of proof under St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).  That is, Shop 'n Save contends it answered Brandt's prima facie case with legitimate reasons for its actions, and that she was unable to show those reasons were a

---

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), sets out the analysis to be applied to cases where the proof of alleged discrimination is circumstantial.  Brandt makes no claim that there is direct evidence Shop 'n Save discriminated against her, so the McDonnell Douglas framework is appropriate here.

pretext for intentional discrimination. Because we conclude as a matter of law that Brandt did not prove that her gender was a motivating factor in Shop 'n Save's decision to hire Frentzel instead of her, we do not consider the challenged aspects of the prima facie case. We assume for purposes of this appeal that Brandt proved a prima facie case of sex discrimination by a preponderance of the evidence.

Once the employee offers sufficient evidence to establish a prima facie case of unlawful discrimination, it becomes the employer's burden to produce evidence that it had legitimate, nondiscriminatory reasons for its actions. Hicks, 509 U.S. at 507. If it does so, the "presumption [of discrimination] raised by the prima facie case is rebutted." Id. (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981)) (alteration added by this Court). The burden of persuasion--"the ultimate burden"--then moves to the employee to prove that the employment action in question was taken at least in part because of her sex. Id. In this phase of the case, the employee ordinarily attempts to prove that the employer's articulated reasons are pretextual, thus raising the inference that sex was a motivating factor for the adverse employment action. But it is not enough that the employee submit evidence of pretext such that the jury disbelieves the defendant's "legitimate" reasons. See O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995) ("[A] plaintiff's proof of pretext, with respect to the defendant's proffered reason for its actions, is relevant to, but not dispositive of, the ultimate issue of intentional discrimination.") (emphasis added). "That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of [sex] is correct. That remains a question for the factfinder to answer, subject, of course, to appellate review--which should be conducted . . . under the 'clearly erroneous' standard . . . ." Hicks, 509 U.S. at 524. We conclude, after de novo review and giving Brandt the benefit of all reasonable

inferences that might be drawn from the evidence, that the jury's finding of unlawful discrimination cannot be sustained as there is insufficient evidence to support it, and that Shop 'n Save was entitled to judgment as a matter of law on Brandt's claims of sex discrimination.

Shop 'n Save contends that it proffered a legitimate reason for hiring Frentzel instead of Brandt. According to the company, Brandt was not qualified to fill the apprentice position as it was conceived by Dougherty and Fant, because she had neither management experience nor "some college." We have carefully reviewed the record in this case, and we are confident that the jury easily might have found that Shop 'n Save-- Dougherty specifically, with Fant's assistance--created the apprentice meat cutter position and its qualifications with the express purpose of hiring Frentzel to fill it, that is, that Shop n' Save's proffered "legitimate reason" was a fabrication, a pretext for its true reasons. We are so persuaded ourselves. But notwithstanding Shop 'n Save's arguable dissembling about its reasons for hiring Frentzel, we do not believe that Brandt has met her burden of proving that the pretext was intended to conceal unlawful discrimination or that her gender in any way motivated the hiring of Frentzel instead of Brandt. The "fact sensitive" issue at this stage of the analysis is "whether the employee has provided evidence from which a reasonable factfinder could conclude that the employer intentionally discriminated against the employee for a prohibited reason." Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir. 1996). We hold that she has not.

The evidence shows that Frentzel took advantage of his "network" to land the apprentice meat cutter position, and that Dougherty obliged his friend by supporting his application for the position, if not creating a tailor-made position for Frentzel. We do not condone the exclusion of Brandt as a viable candidate on this basis. But it is not intentional sex discrimination for

Dougherty to hire an unemployed old friend who happens to be male, without considering an applicant who is neither unemployed nor an old friend and happens to be female. An employer's business decision concerning hiring need not be a good decision to withstand a challenge for sex discrimination; it is enough that it not be motivated by the gender of the employee who is adversely affected by the decision. The proof at trial was that Shop 'n Save had hired no males <u>or</u> females to be apprentice meat cutters before Frentzel, and has hired none since. It is apparent that the position was created for Frentzel, with the job's "qualifications" tailored to Frentzel's background, rather than that Frentzel coincidentally and fortuitously happened into a just-created position that required his "qualifications." The fact that Frentzel has yet to be promoted to a management position lends credence to that inference. But such actions, although unfair from the standpoint of Brandt and persons of either gender who are similarly situated, are not a violation of state and federal laws prohibiting sex discrimination in employment. See <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 781 (8th Cir. 1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."). The evidence suggests that at no time during the proceedings did Shop 'n Save fully acknowledge the reasons Frentzel was selected to fill the apprentice meat cutter position, and the jury evidently found the company's prevarication not at all to its liking. Nevertheless, no reasonable jury could have found that Frentzel was hired to the exclusion of Brandt because Brandt is female. See <u>Gathright v. St. Louis Teacher's Credit Union</u>, 97 F.3d 266, 268 (8th Cir. 1996) (stating that denial of motion for JAML should be affirmed "if a reasonable jury could differ as to the conclusions that could be drawn"). Shop 'n Save thus is entitled to judgment as a matter of law.

Nothing in our recent en banc decision in Ryther v. KARE 11, No. 94-3622 (8th Cir. Mar. 6, 1997), requires a contrary conclusion. This is a case "where the evidence of pretext is inconsistent with an inference of intentional discrimination." Id., slip op. at 7 n.2. Of course, Brandt was free to "rely on the same evidence to prove both pretext and discrimination," but that does not prevent our reversal of the denial of Shop 'n Save's motion for JAML where "the evidence is insufficient for a reasonable trier of fact to infer unlawful discrimination." Id. at 35 n.13 (Loken, J., in a partial separate concurrence commanding a majority of the Court en banc.)

Shop 'n Save raises a number of other issues in its appeal. Because of our disposition of the first issue, it is unnecessary for us to consider those that remain.

The judgment of the District Court is reversed and the case is remanded with instructions for the court to enter judgment for Shop 'n Save.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The majority concedes that Brandt established a prima facie case of sex discrimination and that she presented sufficient evidence for a factfinder to conclude that the employer's proffered reason for hiring Frentzl was a pretext for its true reason. Yet the majority speculates as to the employer's actual motivation and concludes that Brandt's discrimination claim should not have even survived a motion for JAML. Our court should not engage in such conjecture, which are essentially independent credibility determinations. Rather, because Brandt presented more than adequate evidence of sex discrimination to go to a factfinder, I would affirm the jury verdict and judgment of the district court in favor of Brandt.

Brandt established the elements of a prima facie case of sex discrimination. First, as a woman, Brandt is a member of a protected class. Second, she applied for and was qualified for the position of an apprentice meat cutter. In August 1990, Brandt submitted an application to Shop 'n Save for the position and her four-year experience as a meat clerk prepared her for nearly all of the necessary duties of a meat cutter and certainly of an apprentice. Third, despite Brandt's qualifications, she was rejected in favor of a male applicant under circumstances that give rise to an inference of unlawful discrimination. At the time she submitted her application, she interviewed for the position and was told that although the company could not hire her at the time, her application would remain in the active file for one year. Less than a year after Brandt's interview, Shop 'n Save hired Frentzl, who had not even filled out an employment application and who had absolutely no meat-cutting experience. Under the McDonnell-Douglas framework, Brandt's establishment of a prima facie case created a legal presumption of sex discrimination that, if unrebutted, would have entitled her to judgment as a matter of law. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

To prevent entry of such judgment, Shop 'n Save had the burden to articulate a legitimate, nondiscriminatory reason for its actions. The company stated that it hired Frentzl rather than promote Brandt because Frentzl had management experience and some college education and because the decisionmakers were not even aware that Brandt was an applicant for the position when Frentzl was hired. At this point, the legal presumption of discrimination from Brandt's prima facie case disappeared; yet, as our court recently clarified en banc, the elements of the prima facie case remain as evidence from which the factfinder may infer discrimination. Ryther v. KARE 11, No. 94-3622, slip op. at 5-6. (8th Cir. Mar. 6, 1997) (citing Hicks, 509 U.S. at 511). As Justice Powell has explained:

-10-

> In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

Texas v. Burdine, 450 U.S. 248, 255 n.10 (1991); see also Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061, 1069 (3d Cir. 1996) (en banc).

In addition to her prima facie case, Brandt presented an arsenal of evidence to discredit Shop 'n Save's articulated reasons for hiring Frentzl. She alleged that Shop 'n Save pre-selected Frentzl for the position and tailored the job qualifications to fit him. Frentzl was the only person Shop 'n Save ever hired for the apprentice position with the "special" job qualifications. Further, it is questionable whether Frentzl even possessed the qualifications for which he was allegedly hired or, as the majority notes, that the decisionmakers actually had any interest in his education or management experience. Evidence of pre-selection and the creation of a position tailored to Frentzl's qualifications reasonably and effectively could have discredited Shop n' Save's explanation. See Coble v. Hot Springs Sch. Dist. No. 6, 682 F.2d 721, 729 (8th Cir. 1982). Moreover, Shop 'n Save's decision cannot be defended on the basis of the relative qualifications of the applicants if those qualifications were not even considered. See Easland v. Tennessee Valley Auth., 704 F.2d 613, 625 (11th Cir. 1983). Further calling into question the veracity of Shop 'n Save's proffered reason, three and a half years after the company hired Frentzl it had yet to promote him to a management position. Brandt also introduced evidence that the majority of Shop 'n Save's

-11-

meat clerks were female and, at the time of trial, Shop 'n Save had only hired one female meat cutter. The evidence that Shop 'n Save has consistently maintained a workforce segregated by gender further buttressed Brandt's discrimination claim. See Lams v. General Waterworks Corp., 766 F.2d 386 (8th Cir. 1985).

Brandt's strong challenges to the defendant's proffered reasons provided additional evidence from which the factfinder could have inferred that Shop 'n Save's decision was actually motivated by discrimination. As our court en banc just restated:

> "[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reasons, based his decision on an impermissible consideration such as [sex]."

Ryther, No. 94-3622, slip op. at 6 (quoting Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1977)). Or, as Judge Posner put it in his decision for the Seventh Circuit en banc, "If the employer offers a pretext--a phony reason--for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was [sex]." Visser v. Packer Eng'g Assoc., 924 F.2d 655 (7th Cir. 1991) (en banc).

I recognize that evidence of pretext may not support a reasonable inference of discrimination in some cases. "[E]vidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination." Ryther, No. 94-3622, slip op. at 7. For example, in Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328 (8th Cir. 1996), where the employee discredited the employer's reason for his discharge by acknowledging that he was fired for confronting his employer about alleged SEC violations, clearly no inference of discrimination remained. Id. at 1335. But this is

-12-

not a Rothmeier-type case.  Brandt's pretext evidence does not point to a nondiscriminatory reason for passing her over nor has she offered or acknowledged such a justification.  Rather, Brandt vigorously maintains that Shop 'n Save's decision was actually gender-motivated.

Shop 'n Save has consistently argued that it hired Frentzl because he was more qualified and because the decisionmakers did not know Brandt was an applicant, asserting this position to the district court before, during, and after the trial, and continuing to do so before this court. Neither the jury, in considering the MHRA claim, nor the district court for the Title VII claim accepted this explanation.  Nor does the majority, explicitly finding that the defendant's articulated reasons for hiring Frentzl were fabricated.  Yet, after discrediting Shop 'n Save's given reason, the majority creates its own, nondiscriminatory explanation for the defendant's employment decision.  The majority reaches out and speculates that Frentzl was actually hired because of Dougherty's loyalty to an old friend.  If Shop 'n Save's reason for hiring Frentzl was as the majority determined, Shop 'n Save could have and should have advanced this reason before the trial court, where it could have been subjected to a legitimate inquiry.  Shop 'n Save should not benefit from failing to assert the "true" reason for its decision to the district court.  As the Third Circuit stated:

> We routinely expect that a party give honest testimony in a court of law; there is no reason to expect less of an employer charged with unlawful discrimination.  If the employer fails to come forth with the true and credible explanation and instead keeps a hidden agenda, it does so at its own peril.  Under those circumstances, there is no policy to be served by refusing to permit the jury to infer that the real motivation is the one that the plaintiff has charged.

Sheridan, 100 F.3d at 1069.  There is no basis in the record for the majority's speculation.  Even if there were, however, it would

-13-

be for the factfinder--not this court--to consider in determining the employer's motive. We need not decide whether a nonbusiness- related reason for rejecting a qualified woman in favor of a less- qualified, personal friend of a supervisor may ever be the basis for a summary judgment against such a claimant. Suffice it to say that Shop 'n Save's articulated reason smacked of pretext, and it was proper for the factfinder to infer that its real motivation was as Brandt charged.

The properly instructed jury determined that Shop 'n Save discriminated against Brandt on the basis of her sex in violation of the MHRA. The district court then made specific findings of fact and independently determined that Shop 'n Save similarly violated Title VII. We should not reverse the verdicts for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdicts, no reasonable factfinder could have returned a verdict for the nonmoving party. Ryther, No. 94-3622, slip op. at 4. The district court properly denied Shop 'n Save's motion for JAML. I would affirm the court in all respects and award Brandt the damages to which she is entitled.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-