**Joe BLANKS, Jr., and Condorous Breedlove,**

v.

**WASTE MANAGEMENT OF ARKANSAS, INC.,**
**Defendant.**

**No. LR–C–97–48.**

United States District Court,
E.D. Arkansas,
Western Division.

April 8, 1998.

Lynn A. Davis, Cortinez Law Firm, Little Rock, AR, for Plaintiffs.

Marshall S. Ney, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, AR, Dean J. Schaner, Haynes & Boone, LLP, Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

FORSTER, United States Magistrate Judge.

The defendant, Waste Management of Arkansas, Inc. (WMA), has filed a motion for summary judgment on the only remaining claims in this case—plaintiffs' employment discrimination claims pursuant to 42 U.S.C. § 1981.

In their third amended complaint, plaintiffs allege that plaintiff Joe Blanks, Jr., an African–American, was employed approximately ten months by WMA and that WMA advertised the position of Operations Manager. Plaintiffs assert that Blanks responded in April of 1996 with an application for that position, but was denied an interview. Plaintiffs allege that Blanks was discharged on May 22, 1996, "allegedly for a lack of communication with Pulaski County and failure to carry out job responsibilities." Plaintiffs allege that Blanks had received no reprimands or other indication of unsatisfactory performance and that Blanks was discharged "in retaliation for his making application for promotion and because he expressed dissatisfaction with the company's failure to afford him an interview and their failure to articulate demonstrable characteristics for the job." Plaintiffs allege that after Blanks was refused an interview, WMA continued to search for a person to fill the position and ultimately placed a Caucasian in the position.

Plaintiffs allege that plaintiff Condorous Breedlove made application for the position of Operations Manager and was denied an interview for the position, even though he had over thirteen years experience with WMA. Plaintiffs allege that WMA continued to search for a person to fill the position and ultimately placed a Caucasian in the position.

Plaintiffs allege that WMA has discriminated against the plaintiffs "on the basis of race by their acts, practices, policies, usage and customs of discrimination, which include—but are not limited to—the specific instances set forth herein regarding African–American employees in hiring, promotional opportunity, assignments to supervisory, clerical, professional, managerial, high paying positions, which are made in a discriminatory manner by" WMA. Plaintiffs allege that WMA has "historically maintained racial classifications for certain job assignments, whereby some jobs and departments are or have been limited to primarily White employees and some primarily to African–American employees." Plaintiffs allege that WMA's "past practices of limiting jobs or departments to members of one race have the present effect of concentrating large numbers of African–Americans in low paying jobs, i.e., jobs which are menial or otherwise undesirable." Plaintiffs assert that they have applied for management positions which would have advanced them, but WMA has arbitrarily rated them as disqualified. Plaintiffs assert that they have been denied promotions because of their race, while promotions have been granted to white employees with equal or less qualifications than plaintiffs.

Plaintiffs seek, among other things, a permanent injunction restraining WMA "from maintaining a policy, practice, or custom and usage of discrimination against the plaintiffs and other Black persons due to race with regard to recruitment, hiring, training, compensation, promotion, job classification, terms, conditions, discipline and discharge and other privileges of employment." Plaintiffs also request back pay and damages.

Fed.R.Civ.P. 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Roxas v. Presentation College,* 90 F.3d 310, 315 (8th Cir.1996); *Jetton v. McDonnell Douglas Corp.* 121 F.3d 423, 427 (8th Cir.1997). If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R.Civ.P. 56(e). In considering a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■■■ Discriminatory treatment cases under § 1981 are analyzed under the same standards as discriminatory treatment cases brought pursuant to Title VII. *Richmond v. Board of Regents of Univ. of Minn.,* 957 F.2d 595, 598 (8th Cir.1992); *Herrero v. St. Louis University Hospital,* 109 F.3d 481, 483–84 (8th Cir.1997) (same). In a Title VII case alleging discriminatory treatment, a plaintiff first has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A *prima facie* case of discrimination in a failure-to-promote case consists of proof by the plaintiff that (1) he is a member of a protected group, (2) he was qualified and applied for a promotion to an available position, (3) he was rejected, and (4) a similarly situated employee, not part of the protected group, was promoted instead. *Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir.1996); *Lidge–Myrtil v. Deere & Co.,* 49 F.3d 1308, 1310 (8th Cir.1995). A plaintiff may establish a *prima facie* case of discrimination based upon discharge from employment by showing that (1) he belongs to a protected class, (2) he was qualified for the position, (3)

he was discharged from the position, and (4) his discharge occurred under circumstances which allow the court to infer unlawful discrimination. *Davenport v. Riverview Gardens School Dist.,* 30 F.3d 940, 944–45 (8th Cir.1994); *Charles v. Allstate Ins. Co.,* 932 F.2d 1265, 1268 (8th Cir.1991); *Richmond,* 957 F.2d at 598.

"Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. If the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to produce evidence "that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." *Shannon,* 72 F.3d at 682; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). The determination that a defendant has met its burden of production "can involve no credibility assessment ... [f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *St. Mary's Honor Center,* 509 U.S. at 509, 113 S.Ct. 2742. At the close of the defendant's case, the court must decide whether an issue of fact remains to be determined. "None does if, on the evidence presented, (1) any rational person would have to find the existence of facts constituting a prima facie case, and (2) the defendant has failed to meet its burden of production—i.e., has failed to introduce evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* In that event, the court must award judgment to the plaintiff as a matter of law. *Id.* "If the defendant has failed to sustain its burden but reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer." *Id.* at 509–510, 113 S.Ct. 2742. On the other hand, "[i]f the defendant carries the burden of production, the presumption raised by the prima facie case is rebutted," *Burdine,* 450 U.S. at 255, 101 S.Ct. 1089, "drops out of picture," and is

"no longer relevant," *St. Mary's Honor Center*, 509 U.S. at 510, 113 S.Ct. 2742, *Rose–Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1108 (8th Cir.1998). The burden of persuasion, the ultimate burden, then moves to the employee to prove that employer intentionally discriminated against him because of his race. *St. Mary's Honor Center*, 509 U.S. at 510, 113 S.Ct. 2742; *Rose–Maston*, 133 F.3d at 1107–08; *Brandt v. Shop 'n Save Warehouse Foods, Inc.*, 108 F.3d 935, 938 (8th Cir.1997). In this phase of the case, the employee ordinarily attempts to prove that the employer's articulated reasons are pretextual, thus raising the inference that race was a motivating factor for the adverse employment action. *Rose–Maston*, 133 F.3d at 1108. But it is not enough that the employee submits evidence of pretext such that the factfinder disbelieves the employer's "legitimate" reasons. *Brandt*, 108 F.3d at 938. A employee's proof of pretext is relevant to, but not dispositive of, the ultimate issue of discrimination. *Id.*

Subsection (a) of Local Rule C–10 requires a party moving for summary judgment "to annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried." Subsection (b) of the Rule requires the non-moving party opposing the motion to file a separate, short, and concise statement of the material facts as to which it contends a genuine issue exists to be tried. If the non-moving party fails to file a statement, all material facts set forth in the statement filed by the moving party "shall be deemed admitted." Local Rule C–10(c). Local Rule C–7 requires a party opposing a motion for summary judgment to respond to the motion within eleven days from the date the motion was served upon him. *See Ivy v. Kimbrough*, 115 F.3d 550, 552 (8th Cir.1997).

Pursuant to Local Rule C–10, WMA has filed a "Statement of Material Uncontested Facts" and has submitted affidavits and other evidence as well. WMA's statement reflects, in pertinent part, the following facts: WMA owns and operates solid waste collection, disposal, and recycling facilities throughout Arkansas. WMA hired plaintiff Blanks on August 8, 1995, as a Residential Supervisor at its Little Rock facility. In that position, Blanks supervised drivers who worked on residential routes. When WMA hired him, Blanks had no waste disposal industry experience. Just months after Blanks began work, employees complained to Fred Penning, WMA's North Division President and General Manager, about Blanks' supervisory methods. Keith Armstrong, a driver, complained that Blanks had ignored his request for vacation time and even hung up the telephone on Armstrong after Blanks ordered him to come to work. Another driver complained that Blanks did not possess a commercial drivers license, despite the requirement that each Route Supervisor and driver had to obtain such a license.

In response to the complaints, WMA distributed a Complaint Resolution Policy that addressed appropriate methods for dealing with employee issues. Less than one week later, another driver complained that Blanks had chastised employees in open meetings, made false statements about drivers, and refused to allow drivers to leave their routes to eat lunch or use the restroom. The same day, Tracy Dodson, a customer service representative, reported to Penning that Blanks had used vulgar language in front of a room full of customer service representatives while blaming them for the communication problems between Pulaski County and Blanks' department.

Customers of WMA also complained about Blanks. In mid-February 1996, Penning received a letter and phone call from Bob Lane, WMA's contact with Pulaski County. Lane informed Penning that WMA had missed its trash pickups for numerous Pulaski County residents. In an effort to resolve the Pulaski County problems, Lawrence and Penning met with Blanks and other WMA supervisors with Pulaski County responsibilities. Throughout February and March 1996, Penning continued to field complaints from customers in Blanks' service area. Each time Penning received a complaint, he relayed the information to Blanks. On one occasion, a customer complained to Penning that she had repeatedly asked Blanks to deliver a cart to her house, but Blanks ignored her request. To resolve the complaint, Penning instructed

another employee to deliver the cart to the customer. In Blanks' view, WMA had a shortage of carts and could not accommodate the customer.

In mid-February 1996, Penning met with Blanks to discuss Blanks' perceived lack of communication with the Pulaski County staff, his failure to follow up on customer complaints, and his inappropriate behavior toward drivers and customer service representatives. The Pulaski County complaints continued. Believing WMA needed to reassure the County that it was taking steps to improve service, Penning and Lawrence reassigned Blanks to White County.

The Operations Manager position opened in WMA's Little Rock facility in February 1996. WMA advertised the opening in the Arkansas Democrat Gazette, and posted the opening in each of its Arkansas facilities. Among other things, the Operations Manager was required to communicate with customers, ensure customer satisfaction, plan and revise layouts, and oversee dispatching and coordination of trucks. WMA expected candidates for the position to demonstrate a history of organizational, planning, and problem solving skills.

Penning and Roger Lawrence alone made the decision to fill the position. Approximately thirty-six applicants, including Blanks, applied for the position. Plaintiff Breedlove did not apply for the position. After Penning reviewed each resume submitted, he invited each candidate whom he believed possessed the minimum qualifications for the position to come to WMA for an interview. Penning selected about twelve candidates for interviews, and six candidates ultimately were interviewed. Penning and Lawrence only knew the race of a candidate if they knew the candidate personally or met the candidate during an interview. Among the position candidates, Penning and Lawrence were aware of only one black applicant—Blanks.

Penning and Lawrence considered Blanks for the position, but did not interview him because they determined that Blanks was not qualified for the position. First, in Penning's and Lawrence's view, Blanks' prior job experience as a student recruiter for the University

sity of Arkansas at Pine Bluff "was primarily administrative in nature and did not teach or use the broad-based management skills required for an Operations Manager." Secondly, Penning and Lawrence knew that Blanks' position as Residential Route Supervisor provided him with only a narrow view of WMA operations. Thirdly, numerous complaints about Blanks' customer service skills, coupled with WMA drivers' and customer service representatives' repeated complaints about Blanks' supervisory skills revealed that Blanks had not yet mastered the position of Residential Route Supervisor.

WMA interviewed and eventually selected Wes Mullen for the position because of Mullen's superior management qualifications. Mullen had a Bachelor of Science in Business Administration degree in Transportation from the University of Arkansas, had relevant work experience as a manager with a trucking company, and oversaw a trucking terminal that employed a significant number of people, as well as coordinated scheduling, routing, and customer service for the terminal.

After Blanks began his "White County" duties in mid-February 1996, Don Guillory, a WMA sales representative, reported to Penning that the Mayor of Beebe had complained to Guillory about missed recycling stops in his town and a less than acceptable service level. When Penning investigated the Mayor's complaint, he discovered that Blanks had assured Dwight Dicus, WMA's acting Operations Manager, that he already had checked the Beebe routes that day and his crews had completed the routes. Based on this series of events, Penning became concerned that Blanks had failed to inspect his drivers' routes properly before releasing the drivers from their duties. Blanks, Guillory, and George Wheatley, WMA's State Marketing Manager, later met with the Mayor to resolve the complaint.

Blanks failed to report to work on March 18 or 19, 1997. He did not report to his supervisor, Wes Mullen, that he would be absent from work, nor did Blanks return telephone calls from WMA managers. On March 20, 1997, Penning met with Blanks

and Mullen. Blanks explained that he has missed work because he had "family matters" to attend to and that he did not think it was necessary to call anyone during work hours to notify them of his absence.

■ In light of the continued complaints and Blanks' continued supervisory problems, Lawrence and Penning concluded that he possessed inadequate supervisory and customer service skills and that he could not or would not properly perform his duties as a Residential Supervisor. On March 21, 1996, Lawrence and Penning agreed that WMA should discharge Blanks for unsatisfactory performance. On March 22, 1996, Penning terminated Blanks' employment with WMA.

Pine Bluff Disposal hired plaintiff Condorous Breedlove as a residential route helper in Pine Bluff, Arkansas, in October of 1993. WMA later purchased Pine Bluff Disposal, and Breedlove became a WMA employee. Subsequently, WMA promoted Breedlove several times, elevating him to the management ranks. On April 1, 1991, WMA promoted Breedlove from residential driver to Residential Supervisor trainee. Breedlove completed the training on June 1, 1991, and he became a Residential Supervisor. On January 4, 1993, WMA promoted Breedlove to Division Residential Supervisor. In October of 1993, Breedlove transferred to a Commercial Supervisor position at WMA's Little Rock facility. On August 1, 1995, WMA promoted Breedlove from Front End Load Supervisor to Residential Manager.

After WMA had promoted Breedlove several times, he had trouble managing both supervisor and drivers effectively. Given his managerial troubles, WMA demoted him, without any pay decrease, in January of 1996 to Residential Route Supervisor. In that position, Breedlove directly supervised drivers, rather than having direct responsibility for other supervisors. In March of 1996, Breedlove failed to report two accidents or injuries to CNA Insurance Company, as required by WMA. He signed a written warning acknowledging that he had committed these 24–hour loss notice violations.

On June 6, 1996, WMA disciplined Breedlove because he failed to report a sexual harassment complaint a female residential driver had made. Previously, Breedlove had acknowledged his responsibilities under WMA's sexual harassment policy and agreed to report any act of harassment to Human Resources or Legal Counsel and the facility manager. On or about June 10, 1996, WMA sent Breedlove to another training class on sexual harassment procedures.

■ The Little Rock Operations Manager position reopened in June 1996. Penning and Lawrence were responsible for filling the position. Breedlove applied for the position. Of the twenty to twenty-five applicants who applied for the position, Penning interviewed three or four candidates. Penning and Lawrence declined to interview Breedlove because he lacked the necessary qualifications. In his highest WMA position, Residential Manager, he had demonstrated an inability to supervise other supervisors. Additionally, before Breedlove applied for the position, WMA had reprimanded him for loss notice violations and his failure to report a driver's sexual harassment complaint.

In mid-June 1996, WMA selected Phil Bethel for the position. Bethel had (1) considerable knowledge of the waste industry while employed with Waste Management of Indiana—Northwest (WMIN), (2) experience in every facet of WMIN's total operations, (3) performed work in a supervisor's job that entailed managing equipment and people in all of WMA's lines of business, and (4) favorable references from WMIN's General Manager and Operations Manager.

Of the six WMA supervisors in June 1996, Breedlove was the highest paid WMA supervisor. He also attended several WMA training programs.

Plaintiffs have not filed, in response to WMA's Statement of Material Uncontested Facts, a statement of the material facts as to which they contend a genuine issue exists to be tried. Accordingly, the material facts set forth in WMA's statements of uncontested facts are deemed admitted. Local Rule C–10(c).

The court will assume that plaintiffs have proven a *prima facie* case of discrimination based on WMA's failure to promote them

and that plaintiff Blanks, in addition, has proven a *prima facie* case of discrimination based on WMA's termination of his employment. WMA's statement of material uncontested facts and its submissions demonstrate that WMA declined to promote the plaintiffs for legitimate, non-discriminatory reasons, and that plaintiff Blanks was terminated for legitimate, non-discriminatory reasons. Plaintiffs have not submitted evidence showing that WMA's articulated reasons are pretextual or that WMA intentionally discriminated against them because of their race. Accordingly, the court grants summary judgment in favor of WMA on plaintiffs' failure to promote claims and plaintiff Blanks' discharge claim.

■ The court further finds that plaintiffs have presented no evidence from which a factfinder could infer that WMA discriminated against them by failing to properly train them or by providing better training to white employees. Furthermore, plaintiffs have submitted no evidence from which a reasonable factfinder could infer any other type of employment discrimination. Therefore, to the extent plaintiffs allege claims of discrimination other than claims based on failure to promote and discharge, the court grants summary judgment in favor of WMA on those claims.

The court notes that plaintiffs have filed a motion to strike WMA's motion for summary judgment and Statement of Material Uncontested Facts. Plaintiffs contend that WMA has filed at least two affidavits and one letter as exhibits to their motion for summary judgment and Statement of Material Uncontested Facts which do not meet the standards required by Fed.R.Civ.P. 56(e). Plaintiffs contend that the court should strike the affidavits by Roger Lawrence and Fred Penning because they contain inadmissible hearsay and that the court should strike a letter from Bob Lane because it is "clearly hearsay."

Rule 56(e) requires that affidavits relating to summary judgment must "set forth such facts as would be admissible in evidence." It is well settled in this circuit and elsewhere that a court, in considering a motion for summary judgment, can consider only evidence that would be admissible at trial. *Mil-*

*ler v. Solem,* 728 F.2d 1020, 1026 (8th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984); *Hanke v. Global Van Lines, Inc.,* 533 F.2d 396, 398 (8th Cir.1976); *McSpadden v. Mullins,* 456 F.2d 428, 430 (8th Cir.1972); *Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313, 1319 (8th Cir.1986); *Wahpeton Canvas Co. v. Bremer,* 958 F.Supp. 1347, 1365 n. 12 (N.D.Iowa 1997). *See also Dedyo v. Baker Engineering New York, Inc.,* No. 96 CIV. 7152(LBS), 1998 WL 9376, at 3–4 (S.D.N.Y. Jan.13, 1998).

■ Rule 801(c) of the Federal Rules of Evidence provides that hearsay "is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Documents containing customer complaints, which are not offered to prove the truth of the material contained within them but rather to show the state of mind of the employer who made the decision to discharge the employee, are not hearsay and are admissible. *Hardie v. Cotter and Co.,* 849 F.2d 1097, 1101 (8th Cir.1988). In employment discrimination cases, internal documents relied upon by the employer in making an employment decision are not hearsay. Rather, such documents are relevant and admissible because they help explain or may help explain the employer's conduct. *Wolff v. Brown,* 128 F.3d 682, 685 (8th Cir.1997). *See also Majahad v. Reich,* 915 F.Supp. 499, 502 n. 3 (D.Mass.1996).

■ The statements that plaintiffs assert are hearsay are not hearsay. The statements are not being offered and would not be offered at trial to prove the truth of the matters asserted therein. The statements help explain why WMA took certain actions and, particularly, the adverse employment actions about which plaintiffs complain. Accordingly, the court denies plaintiffs' motion to strike.

THEREFORE, the court grants summary judgment in favor of WMA on plaintiffs' § 1981 claim and dismisses plaintiffs' complaint with prejudice. The court also denies plaintiffs' motion to strike.