*720 JOHN R. GIBSON, Circuit Judge, concurring.
I concur in the result because I am concerned that the Court’s opinion could be read to mean that Harris failed to make a prima facie case even though he showed different treatment of Brooks and himself. The district court relied on “cronyism,” a reason other than the one asserted by the employer, to justify the alleged preference for Brooks over Harris:
The evidence produced by Plaintiff raises an inference that in this particular instance there was favoritism shown to Mr. Brooks, a Caucasian!],] to the detriment of Plaintiff, an African-American.
I want to make it clear that in finding for defendants in this case, I do not discount that in some instances, a clannish preference for friends and relatives may also be intertwined with racial preferences and stereotypes that amount to an invidious intent to discriminate on the basis of race. However, in this case, the Plaintiff has failed to produce sufficient evidence to create a reasonable inference establishing his prima facie case.... At worst, the evidence simply tends to create an inference that Mr. Brooks was awarded the extended contract, not because of financial concerns, but because of “cronyism.”
Dist. Ct. slip op. at 8-9. The defendants had contended that the reason Brooks got the extended contract was financial advantage to the city; thus, the district court in effect held that the defendants had used a pretext, but that it was not a pretext for racial discrimination. Our Court today remarks on this reasoning, supra at 5 n. 4, but does not rely on it, except in excusing the alleged laxity of Smith’s inspection of Brooks’s work, supra at 6. I write separately to underscore the problems with the idea that evidence of “cronyism” rules out “discrimination.”
The district court’s conclusion that the evidence created an inference that cronyism influenced the award of the extended contract is troublesome to me. My starting point is the meaning of the word “cronyism,” and for this I turn to Webster’s Third International Dictionary. “Crony” is defined as “an intimate companion esp. of long standing: a familiar friend: an old chum.” “Cronyism” is “partiality to cronies esp. as evidenced in the appointing of political hangers-on to office without due regard being taken of their qualifications.”
Our Court remarks that the district court held that “Harris failed to establish an element of his prima facie case because the evidence created no inference that the defendants intended to discriminate against Harris on the basis of race, but rather only an inference that the defendants intended to favor Brooks due to cronyism.” Supra at 5 n. 4. Where a discrimination plaintiff has shown that he has been treated differently from others who were outside the protected class, I believe that the plaintiff should not be said to have failed to make a prima facie case because there is an explanation for the differential treatment. The original test for a prima facie case as stated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), called for proof
(i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (in) that, despite his qualifications, he was rejected; and (iv) that, after his
rejection, the position remained open and the employer continued to seek applicants from persons of complainant’s qualifications.
*721 McDonnell Douglas itself recognized that the formulation would not fit the facts of every case and would have to be adjusted. Id. at 802, 93 S.Ct. 1817 n. 13. Accordingly, we modified the test where the plaintiff could not show that his position remained open, but could show that he was treated differently from persons who were not members of his protected class; in such a case, we substituted a different fourth element, that the “plaintiff show that his or her discharge occurred under circumstances that create an inference of unlawful discrimination.” Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir.1994). But even with this less specific formulation, the essence of the prima facie test was still unequal treatment of minorities versus non-minorities. See id. The use of the “circumstances that create an inference of unlawful discrimination” formulation was not meant to force the plaintiff to prove the ultimate issue of discrimination in order to make a prima facie case. Id. The prima facie case was still meant to be a first step, not the finish line. See id. (burden of making prima facie case is “not onerous”) (quoting Texas Dep’t of Com’ty Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir.2005).
The question of whether there is a legitimate, nondiscriminatory reason for the different treatment is to be dealt with at the second step of the McDonnell Douglas analysis, not the first. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. Thus, I cannot agree that the evidence that the defendants here had a non-racial reason for treating Brooks and Harris differently should mean that Harris failed to make a prima facie case.
Moreover, I do not believe that characterization of the reason for the unequal treatment as cronyism should always mean that the plaintiff failed to carry his burden of proof on the ultimate issue of discrimination. Although there are certainly cases saying that nepotism, cronyism, and personal favoritism are not equivalent to racial discrimination,[6] it is nevertheless an oversimplification to conclude that “cronyism” is always a legitimate, nondiscriminatory reason for a hiring decision — especially by a governmental employer.[7] This is because “there are similarities between nepotism and racial discrimination. Both select on a basis unrelated to merit. Both practices disqualify some applicants, ab in-itio, based on accidents of birth.” Holder v. City of Raleigh, 867 F.2d 823, 826 (4th Cir.1989). Indeed, racism can be said to be a particular kind of cronyism or favoritism. While we must require that a racial discrimination case has a racial aspect, we must also take care not to condone a defense that would immunize racial discrimination by giving it a different name.
It is well established that cronyism can form the basis of a disparate impact claim where the plaintiff is able to show a pattern of favoritism that closes a protected class out of jobs or contracts. See Foster v. Dalton, 71 F.3d 52, 57 (1st Cir.1995). But this is a disparate treatment case, not a *722 disparate impact case, since Harris does not contend he has shown a pattern of cronyism affecting others than himself. He must therefore prove the element of discriminatory intent. However, even in a disparate treatment case, the same evidence that proves cronyism is often ambiguous and amenable to interpretation as evidence of racial discrimination. The employer could prefer X over Y because X is his friend, but he might choose to hire a friend of his own race in order to avoid hiring a person of a different race. In such cases, a trier of fact could either accept the employer’s non-racial cronyism explanation or find that the explanation was a mask for racial preference. For this reason, in Foster, the First Circuit held that an administrator’s decision to hire a white, male fishing buddy instead of a more qualified African-American woman created an issue of fact as to whether the reason was racism or “undiluted favoritism, unmixed with racial animus.” 71 F.3d at 57.
On such a record, it is the trial court’s prerogative-indeed, its duty- to select the inference that it deems appropriate. Because we cannot accept the appellant’s invitation to create a presumption that the use of an old boy network in hiring constitutes per se racial discrimination, we are powerless to subvert the district court’s election [in a bench trial] between conflicting inferences.
Id.; accord Holder, 867 F.2d at 827 (“Although the presence of family preferences as a factor in a promotion might be part of the evidence upon which an inference of invidious motive may be drawn, intention to discriminate remains a question to be resolved by the ultimate trier of fact.”).
There are similar cases in which judgment as a matter of law was entered for the employer, but they have significant differences. Although the Tenth Circuit affirmed summary judgment in a case where the employer had chosen a white employee over a black one to protect the white woman from being laid off, the plaintiff had conceded the avoidance of lay-off was determinative, and so had conceded away racism. Neal v. Roche, 349 F.3d 1246 (10th Cir.2003). Here, of course, there is no such concession. In Brandt v. Shop ‘n Save Warehouse Foods, Inc., 108 F.3d 935 (8th Cir.1997), our court entered judgment as a matter of law for an employer who passed over a female candidate to hire an unemployed male friend of a vice president of the company. The employer’s proffered reason was that the female candidate was “unqualified,” a reason that this court found was a “fabrication,” made to hide the truth that the job was especially designed for the vice president’s friend. 108 F.3d at 938. Brandt was arguably a “pretext plus” case,[8] decided during the period of uncertainty preceding Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), which of course governs our decision. Under Reeves the prima facie case, combined with the jury’s rejection of the employer’s asserted reason, can suffice to allow a jury to find discrimination. Id. at 147-48, 120 S.Ct. 2097. Even if Brandt had had the benefit of Reeves, it would be distinguishable from our ease because of a factual difference that has been considered significant elsewhere the candidate who got the job was unemployed, thus giving the employer a compelling non-discriminatory reason for hiring him. 108 F.3d at 938; see Neal, 349 F.3d at 1252 (summary judgment where plaintiff conceded “employer had a specific, nondiscriminatory *723 motivation, to rescue the successful candidate from looming unemployment”).
Factual nuances specific to the case will usually give the jury a context for deciding whether favoritism is purely personal or has a racial aspect. The question of whether the favoritism had a racial aspect must be evaluated on the myriad peculiar facts of the case, such as the closeness of the relationship between employer and successful candidate (brother-in-law or cocktail-party acquaintance?), the relative qualifications of the candidates, the employer’s workplace environment, etc. Only in a rare case will the evidence of cronyism be unambiguously non-discriminatory. I believe that a case in which the evidence could support either an inference of nonracial cronyism or preference with a racial aspect should be sent to the trier of fact to choose among competing inferences.
Although the district court relied on the cronyism explanation, the Court today for the most part is able to justify the summary judgment by different reasoning and relies on the cronyism explanation only to excuse the alleged laxity of inspections by Smith of Brooks’ work. I have reviewed the record citations on which Harris relies to show this laxity, and I am not convinced that these citations show that Smith treated Brooks differently from Harris so as to establish a prima facie case on this ground. Accordingly, I concur in the result reached by the Court, though not in all of its reasoning.

. Neal v. Roche, 349 F.3d 1246, 1251-52 (10th Cir.2003); Foster v. Dalton, 71 F.3d 52, 56 (1st Cir.1995); Howard v. BP Oil Co., 32 F.3d 520, 527 (11th Cir.1994); Holder v. City of Raleigh, 867 F.2d 823, 826-27 (4th Cir.1989). But see Domingo v. New England Fish Co., 727 F.2d 1429, 1436 (9th Cir. 1984) (nepotism in hiring, plus use of subjective hiring criteria, plus use of racial labels for certain jobs supported allegations of intentional discrimination).

. See Bacldund v. Hessen, 104 F.3d 1031, 1033-34 (8th Cir.1997), holding that a hiring decision by a governmental employer based on nepotism can be arbitrary, thus violating the equal protection clause of the Fourteenth Amendment.

. "[I]t is not enough that the employee submit evidence of pretext such that the jury disbelieves the defendant's 'legitimate' reasons.” Brandt, 108 F.3d at 938.