Linda F. BELL, Plaintiff–Appellant,

v.

AT & T, a Delaware corporation; Dave McKillen, an individual; and Jim Nicholson, an individual, Defendants–Appellees.

No. 90–6201.

United States Court of Appeals,
Tenth Circuit.

Oct. 18, 1991.

Melvin C. Hall of Chapel, Riggs, Abney, Neal & Turpen, Oklahoma City, Oklahoma, and Nathan Gigger, Oklahoma City, Okl., for plaintiff-appellant.

Hugh D. Rice, H.D. Binns, Jr., Robert J. Campbell, Jr., and Roberta Browning Fields of Rainey, Ross, Rice & Binns, Oklahoma City, Okl., for defendants-appellees.

Before McKAY, Chief Judge, and SEYMOUR and EBEL, Circuit Judges.

McKAY, Chief Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Linda F. Bell appeals the judgment of the United States District Court for the Western District of Oklahoma on her claim brought pursuant to Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* (1988). In addition to arguing that the district court's judgment is clearly erroneous, Ms. Bell claims that the court did not follow the procedure set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). She also takes exception with the district court's refusal to allow her to call a witness to demonstrate pretext at the conclusion of the proceeding.

I.

Plaintiff, a black female, began her employment with AT & T in June 1971 as a long distance operator. She received numerous promotions throughout her fifteen-year tenure with the company until she finally was promoted to the position of Systems Service Consultant, Grade I, a managerial position. As a manager, plaintiff was no longer protected by a collective bargaining agreement; she instead was an at-will employee.

In her evaluation for the year 1985, plaintiff was rated as a top employee. During her absence on maternity leave in 1986, plaintiff was informed that on her return to work she would have a new immediate supervisor and that she had been taken off the State Government Account, in which she had worked prior to her maternity leave, and transferred to the National Account. On November 17, 1986, plaintiff returned to work and found herself without any assignments or accounts to handle. She also was excluded from

meetings involving employees with her same job designation and expertise.

On December 2, 1986, plaintiff's supervisor informed her that she had been designated a surplus employee. She was later shown her evaluation for a portion of 1986, which rated her as meeting expectations. Then on February 17, 1987, plaintiff received her evaluation for the entire year, which rated her as meeting most but not all expectations. On February 20, 1987, plaintiff was laid off.

Plaintiff filed suit against her employer and two immediate supervisors on August 23, 1988. She alleged violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1988) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as other claims based on state law.

At trial, the employer presented evidence relating to events which led to the plaintiff's layoff due to an involuntary reduction in force. Effective January 1, 1987, AT & T was given court approval to merge its long distance business with its telecommunications business. This resulted in a managerial decision to combine the sales forces of each subsidiary, which required fewer employees. In 1986, supervisors of the sales staff of each subsidiary were asked to rank their subordinates in order of their overall performance using prior evaluations. Because the ranking process for each subsidiary was different, a third system was devised. The fourteen employees in the two AT & T sales staffs in the Oklahoma City office were ranked into three categories: far exceeds expectations; exceeds expectations at times; and meets expectations. Plaintiff was placed in the third division with two other employees. The transition team then was instructed to reduce the sales staff of the newly formed group to twelve, with the restriction that the reduction take place only within a particular salary grade and within a group of employees assigned to particular supervisors. After the restrictions were taken into account, eight employees within the group of fourteen were at risk of termination as surplus employees. The transition team then was given the opportunity to protect up to thirty percent of the eight remaining employees at risk. Protected status was meant to be reserved for those employees whose skills and experience the company could not afford to lose. Finally, the company presented incentives for voluntary termination to fulfill its targeted number. These incentives were available to all but protected employees. As it turned out, the only employee wishing to accept voluntary termination was in the protected group.

After protecting the three surplus employees with the highest ranking according to the evaluations previously given, the transition team then listed the remaining five employees according to seniority. Plaintiff had the least seniority of the surplus employees and therefore was terminated along with a second employee. Because the second employee found alternative work within the company, plaintiff bore the full impact of the reduction in force. The two employees subject to termination were the only minority members of the Oklahoma City office.

The jury returned a verdict in favor of the defendants on plaintiff's section 1981 action. After entertaining argument from the parties, the district judge entered a verdict in favor of the defendants on plaintiff's Title VII suit as well. It is the district judge's verdict on her Title VII action that plaintiff appeals here. Though she presents several separate arguments relating to the trial judge's findings of fact and the shifting of burdens in a Title VII suit, each of her claims are inter-related to the exclusion of the testimony of Lori Parker, a co-worker. We therefore focus our analysis on that portion of the trial.

## II.

By mandate of the Supreme Court in *McDonnell Douglas*, the evidentiary burdens and presentation of proof in a Title VII action proceed in three steps. First, the plaintiff must demonstrate by the preponderance of the evidence a prima fa-

cie case of discrimination.[1] If the plaintiff succeeds, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's dismissal. Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of evidence that the legitimate reason proffered by the defendant was only a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *EEOC v. Gaddis*, 733 F.2d 1373, 1378 (10th Cir.1984).

■ Plaintiff initially finds fault with what she asserts is the trial court's failure to sufficiently conform its findings of fact and conclusions of law to the three-step analysis set out in *McDonnell Douglas*. Findings of fact satisfy Rule 52(a) of the Federal Rules of Civil Procedure "if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Lujan v. New Mexico Health & Social Servs. Dep't*, 624 F.2d 968, 970 (10th Cir.1980). The reviewing court must be able to " 'determine the steps by which [it] reached its ultimate conclusion on each factual issue.' " *Anderson v. City of Albuquerque*, 690 F.2d 796, 803 (10th Cir.1982) (quoting 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2579 at 710 (1971)). The district court's order here does not set forth separate findings of fact and conclusions of law. Nor, as the plaintiff argues, does it separate its analysis into the three steps formulated in *McDonnell Douglas* and its progeny.

■ A district court's failure to incant the precise language of the *McDonnell Douglas* formula in its findings of fact and conclusions of law, however, is not of itself ground for reversal. The district court's opinion may be upheld if a reviewing court

is satisfied that both parties were given a full opportunity at trial " 'to address the issues as outlined in *McDonnell Douglas*, and [the issues] were decided for the defendant on a basis recognized by *McDonnell Douglas.*' " *Anderson*, 690 F.2d at 803 (quoting *Kentroti v. Frontier Airlines, Inc.*, 585 F.2d 967, 970 n. 2 (10th Cir.1978)).

The employer contends that the court's conduct at trial demonstrates an adherence to the *McDonnell Douglas* burden procedures. They note the following colloquy at the close of plaintiff's case-in-chief:

> MR. BINNS: Comes now the Defendant AT & T, David McKillen and Jim Nicholson, and moves the Court to dismiss the Title VII action on the grounds and for the following reasons:
>
> \* \* \* \* \* \*
>
> MR. HALL: First of all, under the Title VII prima facie case, I think it's quite obvious that we have established a prima facie case of a Title VII layoff.
>
> THE COURT: Yes, you don't have to argue that anymore.
>
> \* \* \* \* \* \*
>
> The motion to dismiss the Title VII case is denied. Certainly the *McDonnell Douglas* factors have been made out here, so we're going to hear the rest of the case at a minimum.

Record, vol. 4, at 471–75.

In *James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir.1979), we were faced with a similar claim. After a review of the trial transcript, we held that it was apparent the trial was conducted in conformity with *McDonnell Douglas* and its progeny. Moreover, we found it obvious from the trial court's findings that the court determined the plaintiff had failed to carry her overall burden of proof. We concluded that "[t]o reverse and remand with direction that the trial judge reword his find-

---

1. To assert a prima facie case of employment discrimination in a case arising from a reduction in force, the plaintiff must demonstrate:
 1. She was within the protected group;
 2. She was adversely affected by the defendant's employment decision;
 3. She qualified for the position at issue; and

4. There is evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 770–71 (10th Cir.1988).

ings in the precise verbiage from those cases would be a useless gesture." *Id.* at 583. The employer urges that we face the very same situation here.

We are not convinced, however, that we are presented with merely a failure by the district court to mechanically recite the evidentiary burdens of each party. It is clear from the previous excerpted portions of the record that the district court found appellant established a prima facie case of discrimination. Equally clear is the district court's determination in its written opinion that the company's stated reason for the grouping of certain employees and ranking them within each group, which exposed appellant as a surplus employee, was pursuant to a legitimate business purpose. It is the third factor—the opportunity of the appellant to demonstrate that the stated reason for her dismissal was only pretext— with which we are faced with consequential substantive concerns. Of particular importance is the district court's denial at trial of plaintiff's request to call a co-worker as a witness in rebuttal.

On appeal and at trial, appellant emphasizes that a particular employee, Lori Parker, was not included in the group of employees susceptible to the reduction-in-force. Appellant submits that Ms. Parker had less seniority and training than did appellant and that therefore Ms. Parker should have been laid off instead. Because Ms. Parker was not included in the susceptible group of employees, the only two employees scheduled to be laid off in Ms. Bell's section were racial minorities.

■ The district court concluded that the grouping and ranking process reflected a legitimate interest of the employer in retaining its best employees. Ms. Bell was properly placed in the group of employees at risk of termination, the district court concluded, based on these legitimate concerns. Yet the district court's inquiry

should not end at the legitimacy of the grouping and ranking process. In a Title VII case involving a reduction-in-force, the employer must assert a legitimate justification for leaving certain employees out of the group susceptible to termination while including others. Otherwise, a sophisticated employer could immunize itself from liability by placing a minority employee in a group with employees with greater seniority while banding all other employees with less seniority in another group not at risk of termination. In that situation, it is not the process of ranking within the groups that is suspect, but instead the formation of the groups itself. The district court in its analysis, however, fails to deal with either AT & T's proffer of a legitimate reason for excluding Ms. Parker or plaintiff's offer to demonstrate pretext concerning the employer's explanation.

■ It is precisely this process of grouping employees that the appellant attacks here. In addition to the exclusion of Ms. Parker from the group subject to the ranking process, plaintiff attacked the legitimacy of the grouping process by putting on evidence that another employee, Dorothy Shires, was included in the same group as plaintiff but did not share the same work assignment nor the same supervisor. At trial, the employer proffered evidence that the exclusion of Ms. Parker from the banding process was based on her imminent transfer to another department due to certain expertise that she possessed. Plaintiff attempted to call Ms. Parker in rebuttal to demonstrate that the appellees' stated reason for not including Ms. Parker in the group was mere pretext.

The district court, however, ruled that Ms. Parker was an improper rebuttal witness. It reasoned that Ms. Parker's testimony was proper only in appellant's case-in-chief.[2] Yet appellant sought to call Ms.

---

**2.** At the time the court ruled, appellant had yet to subpoena Ms. Parker to testify. The court based its denial, however, on its conclusion that Ms. Parker's testimony was proper testimony for case-in-chief rather than for rebuttal. We cite to the following colloquy:

THE COURT: ... On page three of the Pretrial Order, a Plaintiff's contention is that Lori Parker, white, less experienced, not certified, was not surplused or laid off. We heard a great deal about that in the case-in-chief. That seems to me is a case-in-chief issue, and if the defense [sic] is going to make these

Parker to rebut the articulated claim of the employer that Ms. Parker's transfer to another division based on her special training was imminent.

 When an employer in a Title VII case proffers a legitimate and nondiscriminatory reason for its action, the plaintiff must be given an opportunity to demonstrate the employer's stated reason was merely a pretext for prohibited discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. "The plaintiff's rebuttal evidence must focus on the defendant's specific reasons for taking the challenged employment action." *Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 282 (7th Cir. 1985); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1161 (10th Cir.1991) (employee carries burden to demonstrate employer's proffered reasons were not the true reasons). Where the rebuttal testimony goes directly to the issue of pretext under the test set forth in *McDonnell Douglas*, we hold that it is an abuse of discretion for the trial court to exclude such evidence. Generally, where the evidence rebuts new evidence or theories proffered in the defen-

dant's case-in-chief, that the evidence may have been offered in the plaintiff's case-in-chief does not preclude its admission in rebuttal. *Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir.1987).

Here, to establish a prima facie case the employee need only have presented evidence from which a factfinder may reasonably conclude that the employer intended to discriminate in reaching its decision to terminate the employee. *See Branson v. Prince River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988). Plaintiff sufficiently met this burden by presenting evidence that Ms. Parker, whose expertise, seniority, and work habits were inferior to plaintiff's, was not laid off. Ms. Parker's testimony in rebuttal, according to the proffer by plaintiff at trial, would demonstrate that the employer's stated reason for omitting Ms. Parker from the group susceptible to the layoff was merely pretextual. The testimony would rebut the employer's testimony of the co-worker's special expertise and impending transfer. Hence, the trial court's refusal to allow the testimony was clearly erroneous.[3]

comparisons with Lori Parker and the circumstances of Lori Parker, that's case-in-chief material. I don't consider it proper rebuttal if on the case-in-chief the contention is fact A is true and on the defense case somebody says fact B is true. That's not rebuttal to call somebody who says fact A is true. That's case-in-chief material, and that's what we have here.

\* \* \* \* \* \*

MR. HALL: If I may comment, Your Honor. On this rebuttal, what we're seeking, to rebut and impeach evidence that has been introduced by the Defendant, and that is that Lori Parker was moved prior to the banding and ranking process and that's—we want to introduce this evidence through the actual witness to show that that is not the case, that happened after the banding process and that's their whole case. Defense is hinged on that, and I think it's a genuine issue if we can show that's Lori Parker's understanding. She would know better than Carol Sprinkle, who was very detached, so I think it's not a case-in-chief issue. We stand on that but it's a rebuttal and impeachment of their genuine contentions.

THE COURT: Well, that is true that there is an implication here that was counter to what was presented in the Defendant's case. Oh, not necessarily. If she were here she could say, well, they told me in November that I

was going there and everybody knew it. That's why I wasn't included in this, even though the actual payroll change was not made until the first of the year.

You recall I asked Miss Sprinkle about what did she mean when she talks about people who are "assigned," did she mean currently working in the job or does she mean that they're going to be working in the job in the future. But you're on the record. It might be better to have an appellant issue than the evidence, but I'm not going to permit the rebuttal along those lines.

Record, vol. 7, at 862–63.

3. The employer cites to the following portion of the record dealing with its motion for directed verdict on plaintiff's section 1981 claim and the employer's motion to dismiss to demonstrate that the employee had ample opportunity to introduce evidence demonstrating pretext:

THE COURT: Any succinct response?

MR. HALL: Yes, Your Honor. Only to state that we would stand on the evidence that has been previously presented during this trial, and that we genuinely believe we have established a prima facie case and introduced sufficient evidence to attack Defendants' legitimate nondiscriminatory reasons for non-reemployment of the plaintiff. Thank you.

THE COURT: To no one's surprise, I'm sure, I'm going to defer ruling on the motion

Our conclusion that the plaintiff was erroneously precluded from presenting valid rebuttal evidence to demonstrate pretext generally would end our inquiry. As an aside, however, the district court addressed in its opinion the employer's exclusion of Ms. Parker from the group susceptible to the layoff. Relying on evidence which came out during the testimony of a plaintiff's witness, the court surmised in its opinion that nepotism was the real reason for Ms. Parker's exclusion from the group susceptible to termination—a justification never proffered by the employer.[4] It is clear that once a plaintiff demonstrates a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's dismissal. *See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) ("the *employer* need only 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'") (emphasis supplied, citation omitted); *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 ("the *defendant* must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection") (emphasis supplied, footnote omitted); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

To accomplish this, the defendant must clearly set forth, through the introduc-

pending verdict. And how much of a presentation on the Title VII aspect can I anticipate? We'll be sending the Jury down just a couple of minutes after 1:15. I'd sure like to get to some desk work, but I better know whether we're going to take the whole afternoon on that.

Will there be a Plaintiff's presentation on the Title VII aspect, or is all the evidence in?

MR. HALL: May I confer a moment?

(PAUSE)

MR. HALL: No, Your Honor, I don't believe we would have any additional evidence. Record, vol. 7, at 878–80.

The employer completely ignores, however, its former employee's efforts to call Ms. Parker in rebuttal just prior to this discussion. We therefore find disingenuous any argument directed at this portion of the record to demonstrate that plaintiff had full opportunity to present evidence of pretext.

**4.** When asked questions concerning a prior surplus in which Ms. Parker was scheduled to be laid off, a plaintiff's witness testified:

tion of admissible evidence, the reasons for the plaintiff's [dismissal]. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

*Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95. The plaintiff now bears the burden to demonstrate that the employer's reasons are a pretext for discrimination. "This burden now merges with the ultimate burden of persuading the court that [the employee] has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. at 1095. The "[p]laintiff may meet this burden directly by a showing that racial discrimination actually motivated the defendants, or indirectly by demonstrating that the defendants' reasons are unworthy of belief." *Drake,* 927 F.2d at 1160.

Q. Now, were you aware that Lori Parker had previously in 1985 been declared surplus?

A. Yes, sir.

Q. Okay, was Lori Parker in 1985 laid off?

A. No.

Q. How do you know that?

A. Well, she kept working. Kept showing up every day and I guess was getting a paycheck.

Q. Was there anything else about why she was not laid off that you know about?

A. Well, I understand that her mother wrote a letter to, I believe it was Charlie Brown, CEO of AT & T, and raised a big stink, and that put a lot of pressure on folks to leave her in place. And Lori confirmed that in a conversation at the coffee shop or something one day.

Q. Now, what did she tell you?

A. Well, that her mother had raised enough Cain that she was going to get to keep her job.

Record, vol. 3 at 278–79.

**1514**

If the employer offers a pretext for why it fired the employee, then the trier of fact may infer that the employer is trying to conceal a discriminatory reason for its action. Yet when the trial court relies on what it considers to be a legitimate reason not articulated by the employer to rebut the plaintiff's prima facie case, as the trial court did here, a plaintiff does not have a full and fair opportunity to demonstrate pretext or otherwise contradict the rationale of the district court.

For the foregoing reasons, we RE-VERSE the decision of the district court and REMAND the cause for further proceedings consistent with this opinion. The mandate shall issue forthwith.