F I L E D
United States Court of Appeals
Tenth Circuit

NOV 17 2003

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VANESSA A. NEAL,

        Plaintiff-Appellant,

v.

DR. JAMES C. ROCHE, Secretary of
the Air Force, U.S. Department of
Defense,

        Defendant-Appellee.

No. 02-6381

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-01-1371-F)**

Submitted on the briefs:

Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis, Oklahoma City,
Oklahoma, for Plaintiff-Appellant.

Robert G. McCampbell, United States Attorney, H. Lee Schmidt, Assistant U.S.
Attorney, Oklahoma City, Oklahoma, for Defendant-Appellee.

Before **EBEL**, **PORFILIO**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Plaintiff Vanessa A. Neal, an African-American, brought this Title VII action against her employer, the Secretary of the Air Force, contending that the employer engaged in racial discrimination by selecting a less qualified white woman to fill a job opening. [1] In response to the employer's assertion that it selected the white candidate because of her experience and knowledge, plaintiff argued that the employer had a concealed motive for its actions: a desire to rescue the successful white candidate from being laid off. In *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995), we stated that if a plaintiff concedes that the employer's stated reason for an adverse employment action is a pretext for a motive *not* prohibited by the civil rights laws, the district court may enter summary judgment for the employer. *Id.* at 451 n.14. Viewing plaintiff's argument as a concession of a nondiscriminatory motive, the district court entered summary judgment for employer. We must determine whether the district court correctly applied *Randle* under the circumstances of this case.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

FACTS

Although the record does not include a copy of plaintiff's complaint, the district court summarized it as follows:

> This action involves a claim of race discrimination brought by plaintiff Vanessa A. Neal, an African American, against Dr. James G. Roche, Secretary of the Air Force. The undisputed facts establish that at the time the dispute arose, plaintiff was employed as a medical data technician at Tinker Air Force Base. Plaintiff failed to receive a promotion to the job of budget analyst when Captain Lisa L. Jameson ultimately selected another employee, Betty Norton, a white woman who was then employed as a purchasing agent at the base, to fill the job of budget analyst. Alleging discriminatory treatment as a result of race discrimination, plaintiff brings her claims under 42 U.S.C. § 2000e *et seq.*, (Title VII).

Aplt. App. at 134.

Plaintiff relies on circumstantial evidence to establish her Title VII claim. Title VII claims based on circumstantial evidence are governed by the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). This three-step analysis first requires the plaintiff to prove a prima facie case of discrimination. *Id.* If plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. *Id.* "If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative

-3-

factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.*

The district court found that plaintiff had put forth evidence sufficient to establish her prima facie case of disparate treatment. Aplt. App. at 135. It further found that defendant had advanced a legitimate, nondiscriminatory reason for his action: "Capt. Jameson selected the selectee because of her experience as a purchasing agent, her knowledge of the cost centers and the process through which a major portion of the hospital budget is spent." *Id.* (quoting defendant's brief, Aplt. App. at 9).

Since the employer advanced a nondiscriminatory reason for not promoting plaintiff into the position she sought, the burden shifted back to plaintiff to show that the employer's reason was pretextual, i.e., unworthy of belief. Plaintiff made several arguments concerning pretext. She presented evidence that Norton took a demotion (but not a pay cut) to obtain the position. *Id.* at 124. She argued that the Merit Promotion Certificate issued in connection with the decision showed that plaintiff had a bachelor's degree, while Betty Norton had only an associate's degree. *Id.* at 132. She further contended that, contrary to her employer's assertions, Captain Jameson (the officer who did the hiring) knew her personally, *id.* at 118, and therefore knew of her race, prior to the promotion decision. Plaintiff also asserted that she was not notified of the final selection, as required

-4-

by departmental procedures. *Id.* at 99. Finally, plaintiff claimed that Captain Jameson "doctored" the Merit Promotion Certificate to make it appear that Ellen Braham (who had both a bachelor's degree and purchasing agent experience) would have been her first choice, when in fact Captain Jameson knew that Braham had already obtained another position. *Id.*

The district court did not explicitly determine whether this evidence undermined the employer's stated reason for denying plaintiff the promotion. Instead, using an analysis not argued for by defendant, the district court focused on statements plaintiff had made that suggested that the employer had a hidden, but nondiscriminatory motive for its actions: to save the white candidate, Betty Norton, from a layoff. The district court summarized plaintiff's statements as follows:

> [D]efendant's stated reason for hiring Betty Norton instead of plaintiff is pretextual; defendant's stated reason is pretextual because defendant did not actually hire Betty Norton as budget analyst due to Betty Norton's experience as defendant claims; rather, defendant hired Betty Norton as budget analyst because defendant was protecting employment for Betty Norton, who was otherwise subject to being laid off as part of a reduction in force which was occurring as military jobs were being moved to civilian status.

*Id.* at 138.

Relying on these statements, the district court found that plaintiff had conceded that her employer's true motive was not discriminatory. For this reason, it granted summary judgment for the employer.

ANALYSIS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review a grant of summary judgment *de novo*, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

In granting summary judgment for defendant, the district court relied on a footnote in *Randle*, 69 F.3d 441. *Randle* established the general rule that in cases where the employer advances a legitimate, non-discriminatory reason for an employment action, the plaintiff may survive summary judgment by showing that the employer's asserted reason was pretextual. *Id.* at 451. The plaintiff does not have to come forward with additional, direct evidence of a discriminatory motive (sometimes referred to as "pretext plus"). *Id.* There is a significant exception, however:

Of course, in the unlikely event that the plaintiff concedes that the real, albeit concealed, reason for the employment decision was a motive that itself is not prohibited under the civil rights laws, the

-6-

plaintiff would remain vulnerable to summary judgment because the plaintiff's concession of a lawful motive would take the issue of motive from the jury and preclude the inference of a discriminatory motive that the jury could otherwise draw from the fact of pretext. For example, if a defendant stated that the plaintiff was fired for unexcused absences and the plaintiff offered evidence that reason was pretextual and contended instead that he or she was really fired because the boss wanted to make that job available to his or her spouse, the defendant would be entitled to summary judgment because of plaintiff's concession that the true reason was not a prohibited discriminatory reason, even if it was concealed.

*Id.* at 451 n.14.

Before applying this exceptional rule to our case, we must consider two threshold issues: (1) whether *Randle* footnote fourteen is dicta, and (2) whether the district court deprived the plaintiff of due process by applying the *Randle* footnote sua sponte. We conclude that neither the dicta rule nor due process prevents application of footnote fourteen here.

1. **Status of *Randle* footnote fourteen**

"[A] panel of this [c]ourt is bound by a holding of a prior panel of this [c]ourt but is not bound by a prior panel's *dicta*." *Bates v. Dep't of Corr.*, 81 F.3d 1008, 1011 (10th Cir. 1996). Plaintiff argues that *Randle* footnote fourteen is dicta, because it was not essential to the holding in the case where it appeared. Regardless of whether the footnote was dicta at the time it appeared, it is no longer. It has been adopted, and arguably extended, in at least one subsequent Tenth Circuit case. *See Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 328

(10th Cir. 1996). We also note that the Supreme Court recently adopted an analysis, in the context of a Fed. R. Civ. P. 50 motion for judgment as a matter of law, that bolsters our use of footnote fourteen. The Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. *For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision* [.]

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (emphasis added). We conclude that the *Randle* footnote is not dicta, and is binding on this panel.

### 2. **Due process concerns**

The district court raised the *Randle* issue sua sponte. We must consider whether in doing so the district court deprived plaintiff of the opportunity to rebut its conclusion that she had conceded her case.

In particular, we are concerned with whether *Bell v. AT&T*, 946 F.2d 1507 (10th Cir. 1991), dictates a remand in these circumstances. In *Bell*, the employer advanced a nondiscriminatory reason for laying off the African-American plaintiff: employees terminated in a reduction-in-force had been grouped in accordance with seniority. The plaintiff punctured this explanation by showing that at least one less-qualified white employee had been excluded from the

grouping procedure. The district court nevertheless entered judgment for the employer. The district court surmised from the testimony of one of plaintiff's witnesses that the real but hidden reason the white employee had been excluded from grouping was nepotism–a reason never advanced by the employer. *Id.* at 1513. We concluded that this sua sponte invocation of a new, nondiscriminatory reason for the employer's actions deprived the plaintiff of "a full and fair opportunity to demonstrate pretext," and remanded for further proceedings. *Id.* at 1514.

Here, as in *Bell*, the district court relied on testimony presented as part of plaintiff's case to establish a "real" but concealed nondiscriminatory motive for the employer's actions. In both *Bell* and in this case, the employer did not argue for the motivation eventually relied upon by the district court.

These similarities, however, do not require a remand, for at least two reasons. First, under the *Randle* analysis, the district court must rely on more than just evidence presented by the plaintiff; the plaintiff must *concede* the nondiscriminatory motivation in her own position before the court. Assuming that such a concession exists here (a matter that we take up later in this opinion), plaintiff cannot claim that the district court developed its theory of a nondiscriminatory motivation without giving her the opportunity to present "her side of the story."

Second, plaintiff does not argue, nor does the record suggest, that plaintiff would be able to present evidence to undermine the concession she has already made. The district court found that "[p]laintiff has never claimed, and the facts as verified would not seem to support a claim, that Betty Norton's job was protected because she was white." Aplt. App. at 139 n.5. In her appellate briefs, plaintiff does not argue that her employer would not have rescued an African-American's job, had it been in jeopardy, as it did Betty Norton's. For these reasons, we conclude that plaintiff was not denied a full and fair opportunity to present her case.

3. **Application of** *Randle*

Having disposed of threshold matters, we move to the application of *Randle*. In order to apply the *Randle* footnote here, we must answer two questions. First, was the motivation allegedly conceded by the plaintiff nondiscriminatory? Second, did plaintiff actually concede that her employer had this motivation?

a. **"Saving a job" as a nondiscriminatory rationale**

Plaintiff argues that the *Randle* exception should not apply in her case, because the successful white candidate was not married to her employer, the example given in *Randle* footnote fourteen. While wary of expanding the *Randle* exception beyond its elastic limits, we do not read *Randle* so narrowly. Persuasive

-10-

authority for a broader view of *Randle* can be found in the "friendship" and "nepotism" cases. These cases hold that an employer's actions based on loyalty to a friend or relative (particularly an unemployed friend or relative) are not considered "discriminatory," even where they benefit the nonprotected friend or relative at the expense of a more qualified, protected person. *See, e.g., Brandt v. Shop'n Save Warehouse Foods, Inc.*, 108 F.3d 935, 938 (8th Cir. 1997) ("[I]t is not intentional sex discrimination . . . to hire an unemployed old friend who happens to be male, without considering an applicant who is neither unemployed nor an old friend and happens to be female."); *Foster v. Dalton*, 71 F.3d 52, 54, 56 (1st Cir. 1995) (upholding, against Title VII challenge, supervisor's decision to alter job description to favor his "fishing buddy" over generally more qualified black female applicant, because "Title VII does not outlaw cronyism"); *Holder v. City of Raleigh*, 867 F.2d 823, 825-26 (4th Cir. 1989) (rejecting "nepotism" as an impermissible hidden motive equivalent to discrimination for employer's refusal to hire more qualified black applicant). [2]

The friendship and nepotism cases only illustrate a broader principle: that employers are free to employ nondiscriminatory criteria that are "unfair" or even

---

[2] It should be noted that these cases are generally limited to claims involving disparate treatment, rather than disparate impact. *See Foster*, 71 F.3d at 57; *Holder*, 867 F.2d at 826. This case is a disparate treatment case.

reprehensible, so long as they are not discriminatory. As Judge Easterbrook has explained:

> A public employer may feel bound to offer explanations that are acceptable under a civil service system, such as that one employee is more skilled than another, or that "we were just following the rules." The trier of fact may find, however, that some less seemly reason–personal or political favoritism, a grudge, random conduct, an error in the administration of neutral rules–actually accounts for the decision. Title VII does not compel every employer to have a good reason for its deeds; it is not a civil service statute. Unless the employer acted for a reason prohibited by the statute, the plaintiff loses.

*Benzies v. Ill. Dep't of Mental Health & Developmental Disabilities*, 810 F.2d 146, 148 (7th Cir. 1987). Thus, we conclude that the employer's decision to save a white employee from an impending layoff by giving that employee preference over an African-American employee who did not face a layoff, does not give rise to an inference of discrimination under the facts of this case.

Our decision in *Luna v. City & County of Denver*, 948 F.2d 1144, 1149 (10th Cir. 1991), is not to the contrary. In *Luna*, the employer had already decided on a white candidate when a more qualified minority candidate presented himself for an interview. The employer skewed the interview process by calling the minority candidate to a "meeting" and bombarding him with technical questions, without telling him he was actually being interviewed for the job. *Id.* at 1147. It then attempted to justify its decision in favor of the white candidate by claiming that it had already been prepared to hire him when the minority

-12-

candidate unfortunately showed up, and by arguing that the minority candidate performed poorly at the impromptu job interview. Under these circumstances, exhibiting blatant racial skewing in the selection process, this court rejected the employer's attempt to plead "cronyism" as a defense to its actions. This case differs from *Luna,* because here the employer had a specific, nondiscriminatory motivation, to rescue the successful candidate from looming unemployment, rather than simply a predetermined, subjectively-based bias in favor of a white candidate.

The employer's conceded motivation here, to save Betty Norton from a layoff, does not give rise to an inference of discrimination under the facts of this case. We must next determine whether plaintiff in fact conceded that this was the employer's true motivation.

b. **Concession by plaintiff**

Plaintiff argues that *Randle* footnote fourteen does not apply, because she did not concede that her employer's true reason for not promoting her was nondiscriminatory. Aplt. Opening Br. at 6. A careful reading of the *Randle* footnote shows, however, that an employee need not specifically concede that her employer's real reason was "nondiscriminatory." Rather, it is enough if the plaintiff concedes a hidden motivation which *the court* concludes is nondiscriminatory, i.e., not prohibited under the civil rights laws. This accords

-13-

with the district court's general duty within the *McDonnell Douglas* framework.
*See, e.g., Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374 (2d Cir. 2000) (stating
district court has duty to decide "whether the defendant has . . . satisfied the
burden of proffering a non-discriminatory reason for its conduct.").

Plaintiff's summary judgment materials amply support the district court's
determination that she conceded a motive which was nondiscriminatory. Plaintiff
explained the reason for her employer's actions as follows:

> Capt. Jameson selected Betty Norton for the Budget Analyst
> position because Betty Norton's civilian purchasing agent position
> was being converted to a military position and Jameson who was
> transferring to Wright-Patterson Air Force Base in Ohio, selected
> Betty Norton to provide Norton with a secure position. Norton's
> selection for the Budget Analyst position was **not** a promotion for
> Norton, it was a demotion to a lower grade at the same pay.

Aplt. App. at 92.

Later, in the same response, plaintiff stated:

> The relevant documents in this case reveal that Capt. Jameson
> supervised both Ellen Braham and Betty Norton, who were civilian
> purchasing agents. However, both Ellen Braham and Betty Norton
> were about to lose their purchasing agent positions because those
> positions were being converted from civilian to military. Both Ellen
> Braham and Betty Norton secured positions however, both positions
> were not promotions but instead were demotions in grade with
> Braham and Norton allowed to keep their same salary.

*Id.* at 100.

In an affidavit, plaintiff stated as follows:

8. It was common knowledge that certain positions would be converted from civilian to military due to changes in the authorization made by the Medical Group periodically.

9. In 1995, the purchasing agent position held by Ellen Braham and Betty Norton were placed on the authorization list meaning that those positions would be converted from civilian to military and any civilian employee seating on [sic] a civilian purchasing agent position who did not find another position would be laid-off effective September 30th, the end of the fiscal year.

*Id.* at 118.

We agree with the district court that these statements represent plaintiff's concession of a nondiscriminatory motivation for her employer's actions. Plaintiff has conceded, for summary judgment purposes, that her employer was motivated by a hidden but nondiscriminatory reason in selecting a white candidate rather than plaintiff. For this reason, we must affirm summary judgment in favor of the employer.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.