**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 9 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PENNY R. OLIVER,

        Plaintiff-Appellant,

v.

PETER KIEWIT &
SONS/GUERNSEY STONE,

        Defendant-Appellee.

No.  03-8036
(D.C. No. 02-CV-80-J)
(D. Wyo.)

**ORDER AND JUDGMENT**  *

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Penny R. Oliver appeals from the district court's order granting summary judgment on her Title VII claims for sexual harassment and retaliation to defendant Peter Kiewit & Sons/Guernsey Stone ("Guernsey Stone"). We affirm.

The district court presented a detailed account of the facts of this case in its order granting summary judgment to Guernsey Stone. Aplt. App. at 247-53. We reiterate only those facts necessary to our decision.

Guernsey Stone employed Oliver as a haul truck operator, and later as an operator of a front-end loader, at its stone quarry north of Guernsey, Wyoming. Oliver contends that she was subjected to sexual harassment at Guernsey Stone beginning in 1994 and continuing until Guernsey Stone laid her off in September 2000. She alleges that her male co-workers and supervisors used offensive language and made graphic jokes in her presence, creating a hostile work environment. She also contends that she was laid off in retaliation for her complaints about the harassment.

The district court determined that the conduct Oliver alleged was not sufficiently severe or pervasive to have created a hostile work environment. It concluded that Oliver had failed to make a prima facie case of retaliation, and that she presented no evidence to rebut Guernsey Stone's legitimate, non-retaliatory reason for laying her off: that she was laid off, along with several other employees, due to lack of work.

Guernsey Stone asserts that Oliver's claims are barred by res judicata, collateral estoppel, or judicial estoppel, because she voluntarily dismissed a prior state administrative proceeding raising the same claims. The district court found it unnecessary to consider these assertions, as do we. We turn directly to the merits of the district court's grant of summary judgment on Oliver's claims.

> We review a grant of summary judgment *de novo*, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

*Neal v. Roche*, 349 F.3d 1246, 1249 (10th Cir. 2003) (quotation omitted).

**1. Sexual harassment claim**

"[C]ourts have consistently recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987). Oliver proceeds on a hostile work environment theory. A hostile work environment is one where "[sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank,*

*F.S.B. v. Vinson*, 477 U.S. 57, 65 (1986) (quotation omitted). To form the basis of a claim, the sexual harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 67 (quotation omitted).

The district court concluded that "the conduct alleged by Oliver does not create a genuine issue of material fact about whether she was subject to severe or pervasive harassing behavior." Aplt. App. at 257. Having reviewed the record *de novo*, we agree. We therefore affirm summary judgment for Guernsey Stone on Oliver's sexual harassment claim, for substantially the same reasons stated on pages 10 through 13 of the district court's decision of April 7, 2003. *See id.* at 256-59.

**2. Retaliation claim**

Oliver's failure to advance a viable sexual harassment claim does not necessarily preclude her assertion of a retaliation claim. So long as she had a reasonable, good-faith belief that the underlying conduct that she opposed violated Title VII, she may maintain a separate claim for retaliation. *See, e.g., Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003), *cert. denied*, 124 S. Ct. 1416 (2004).

### a. Background

Oliver's retaliation claim is based on the following facts. Shortly before she was laid off, Oliver reported finding a cucumber placed in a cap in the lunchroom. The cucumber was arranged in such a way that Oliver believed it had a sexual (i.e., phallic) connotation. Oliver contends that she was laid off because she reported the cucumber incident to a supervisor.

Viewed in isolation, we might have difficulty saying that one could reasonably believe that the "cucumber in a cap" incident was a violation of Title VII. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (rejecting retaliation claim where no reasonable person could believe that underlying Title VII violation existed). Viewed in context, however, the record shows that this was not the only incident at Guernsey Stone involving a cucumber with a sexual connotation. The same week of the "cucumber in a cap" incident, one of Oliver's co-employees picked up a cucumber and made an obscene stroking gesture with it in front of a female co-employee, asking her "how would you like to have this under the table?" Aplt. App. at 89-90. Oliver observed the incident, but could not see exactly what the co-employee was doing with the cucumber. While neither of the cucumber incidents rises to the level of a Title VII violation, we conclude that Oliver has made a showing sufficient to survive summary judgment on the question of whether she *reasonably believed* that the cucumber incident

was an act of sexual harassment. We therefore turn to the merits of her retaliation claim.

### b. Prima facie case

To make out a prima facie case of retaliation, Oliver must show that: "(1) [she] engaged in protected opposition to discrimination; (2) [she] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). As noted, we conclude, for summary judgment purposes, that the first element of the test was satisfied when Oliver complained about the cucumber incident. Like the district court, we also conclude that the second element was satisfied because the layoff was an adverse employment action.

We next consider whether, for summary judgment purposes, Oliver met the third requirement, of showing a causal connection between her complaint about the cucumber incident and the subsequent layoff. Oliver relies on the close temporal proximity (eleven days) between the date of her complaint and the date of the layoff. [1] Close temporal proximity between protected conduct and an

---

[1] Oliver complained about the cucumber incident on September 14, 2000. Aplt. App. at 102-05. She was laid off on September 29. *Id.* at 179. By our count, this is fifteen days, not eleven. It appears, however, that Oliver may be referring to eleven *working* days. *See id.* at 148-49. This distinction is not

(continued...)

-6-

adverse action is sufficient to justify an inference of retaliatory motive, thereby establishing the third element of a prima facie case of retaliation. *See, e.g., Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004). Oliver's showing of close temporal proximity satisfies the third element of the prima facie case for summary judgment purposes.

### c. Legitimate, nondiscriminatory reason

Since Oliver met her prima facie case, the summary judgment burden shifted to Guernsey Stone to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *O'Neal*, 237 F.3d at 1252. Guernsey Stone argues that a layoff was necessary because it could not afford to maintain its current level of staffing, and that it kept the employees it felt were best qualified to perform the work it had available. It also notes that Oliver was one of seven employees laid off because of the lack of work. Guernsey Stone thus has articulated a legitimate, nondiscriminatory reason for the layoff.

### d. Pretext

Guernsey Stone's articulation of a legitimate, nondiscriminatory reason shifted the burden back to Oliver to "respond by demonstrating that [Guernsey Stone's] asserted reasons for the adverse action are pretextual." *Id.* Oliver does

_____

[1](...continued)
significant for summary judgment purposes.

not contest Guernsey Stone's contention that a layoff was necessary. She does, however, contest Guernsey Stone's reason for laying *her* off, based on its contention that it kept its best qualified employees. Oliver cites the seniority rules of the collective bargaining agreement between her union and Guernsey Stone, which require Guernsey Stone to consider seniority as a factor during a reduction in force or layoff.

While her EEOC complaint was pending, Oliver pursued a separate grievance under her union's collective bargaining agreement with Guernsey Stone. An arbitrator ultimately ruled in her favor in the union proceeding, concluding that Guernsey Stone had failed to consider seniority when it laid her off. The arbitrator rejected her argument that the layoff was retaliatory, however, for lack of evidence.

Oliver points to the finding in the arbitration of her union grievance that Guernsey Stone had failed to give any consideration to seniority when it laid her off. Oliver claims (and the arbitrator concluded) that she had seniority over some employees that were retained. She asserts that Guernsey Stone ignored this factor in the layoff because it wanted to get rid of her.

The district court refused to credit the arbitrator's finding that the layoff violated the collective bargaining agreement because, it reasoned, if it did so it would have to "give equal consideration to the Arbitrator's finding that plaintiff's

arguments regarding Guernsey Stone's allegedly retaliatory behavior were not persuasive because she did not present convincing evidence in support of those assertions." Aplt. App. at 271. Notwithstanding this protestation of even-handedness, the district court proceeded, on the next page of its decision, to use the arbitrator's finding against Oliver. *Id.* at 272 ("Oliver has not offered any evidence or information to refute Guernsey Stone's legitimate non-discriminatory reason *or to refute the Arbitrator's rejection of her claim of retaliation.* ") (emphasis added). Thus, the district court did exactly what it said it would not do: it applied the arbitration results in a one-sided manner against Oliver.

This error was particularly significant because the portion of the arbitrator's decision rejecting Oliver's retaliation claim was not entitled to great weight in this case. The primary issue to be resolved in arbitration was whether Guernsey Stone had violated the Collective Bargaining Agreement, not whether she was retaliated against within the meaning of Title VII. *Id.* at 183. Although the union raised the retaliation issue in the arbitration proceedings, it did so belatedly, failing to mention it until the actual arbitral hearing.

The district court was entitled to consider the arbitrator's decision as evidence in this Title VII proceeding, giving it "such weight as the court deems appropriate." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974). An important factor to be considered when assigning weight to such a decision,

however, is the "adequacy of the record with respect to the issue of discrimination." *Id.* at 60 n.21. Here, the record was plainly inadequate on the retaliation issue, which the arbitrator found was raised at the last minute and not an important part of Oliver's grievance; it was precisely this inadequacy that led the arbitrator to reject the claim. There was no full and fair hearing on Oliver's Title VII retaliation claim resulting in the "equivalent [of] judicial factfinding." *Id.* at 57. The district court therefore was not required to give *any* weight to the arbitrator's rejection of the retaliation claim, and it erred in concluding that it was required to do so if it considered other portions of the arbitrator's decision.

### e. Alternative ground for affirmance

That said, affirmance is proper in this case, for another reason. [2] The collective bargaining agreement allowed Guernsey Stone "to select the Employees best skilled for the particular work to be performed" but required it to consider seniority in cases of reduction of force. Aplt. App. at 170. While the arbitrator found that Guernsey Stone had departed from the collective bargaining agreement by failing to consider seniority, there is no evidence in the record that it failed to do so evenhandedly. The facts on which the arbitrator relied indicate not only

---

[2]    We may, of course, affirm the district court on any grounds for which an adequate record exists even, as here, where neither the district court nor the parties recognized the issue. *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

that Guernsey Stone failed to take *Oliver's* seniority into account, but that it did not take *anyone's* seniority into account during the layoff. *See* Aplt. App. at 189 ("Thus, Anderson could not testify that *any* employee's years of service was discussed"; "Again, nothing was said about considering *an employee's* seniority.") (emphasis added). This decision to ignore seniority did not merely affect Oliver; the arbitrator found that one of the other employees laid off had seniority over Oliver. *Id.* at 182.

The fact that an employer departed uniformly, and not individually, from contractual criteria when conducting a reduction in force or layoff is not, by itself, evidence of pretext. *See generally Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1173-74 (10th Cir. 1998); *Jones v. Unisys Corp.*, 54 F.3d 624, 632-33 (10th Cir. 1995). The evidence in this case shows that Guernsey Stone uniformly disregarded seniority in the layoff. Guernsey Stone's failure to consider seniority, while perhaps stating a claim cognizable in union arbitration under the collective bargaining agreement by the particular employees affected, fails to demonstrate pretext for purposes of summary judgment in this Title VII case. This being the case, the district court properly granted summary judgment for Guernsey Stone,

based on its unrebutted showing of a legitimate, non-discriminatory reason for the layoff.

The judgment of the district court is AFFIRMED.

Entered for the Court


Robert H. Henry
Circuit Judge